## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **GEORGE E. HAGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:06-00633** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit a Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 6.) This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) and the Defendant's Motion for Judgment on the Pleadings. (Doc. No. 15.)

The Plaintiff, George E. Hager (hereinafter referred to as "Claimant"), filed an application for DIB on April 15, 2004, (protective filing date), alleging disability as of April 6, 2004, due to mid and lower back pain, neck pain, right shoulder pain, hearing loss, vision problems, loss of one testicle, breathing problems, left hand numbness, difficulty sleeping, depression, inability to be around crowds of people, and nerves.[1] (Tr. at 36, 54, 55-57, 85-86.) The claim was denied initially and upon reconsideration. (Tr. at 34-35, 36-38, 45-47.) On February 25, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 48.) The hearing was held on August 17,

---

[1] The undersigned notes that Claimant is insured for disability payments through December 31, 2009. (Tr. at 59, 61.)

2005, before the Honorable John T. Yeary. (Tr. at 367-406.) By decision dated September 23, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 18-29.) The ALJ's decision became the final decision of the Commissioner on June 23, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On August 14, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes

3

of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease, chronic obstructive pulmonary disease, and blindness of the left eye, which were severe impairments. (Tr. at 20-23.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23.) The ALJ then found that Claimant had a residual functional capacity for a significant range of medium work with the following limitations:

> He should avoid concentrated exposure to temperature extremes, humidity, vibrations, fumes, and industrial pollutants. The job should allow for blindness of the left eye that occurred at the age of 5 or 6.

(Tr. at 26.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 26.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a table buser, hand packer, and material handler, at the medium level of exertion. (Tr. at 26-27.) On this basis, benefits were denied. (Tr. at 27-29.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on May 14, 1949, and was 56 years old at the time of the administrative hearing. (Tr. at 19, 55, 375.) Claimant had a high school education. (Tr. at 19, 377.) In the past, he worked as a section foreman in the underground coal industry. (Tr. at 19, 86-87, 377-79, 400.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in not finding that Claimant suffers from severe right shoulder and mental impairments and (2) failed to give proper weight to the opinions of Claimant's treating physician, Dr. Ahmed D. Faheem, M.D., the opinion of Dr. Johnny T. Dy, M.D., and to the opinion of Dr. Rogelio

6

T. Lim, M.D., a state agency physician. (Pl.'s Br. at 11-21.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 11-22.)

1. <u>Severe Impairments</u>.

Claimant first argues that the ALJ erred in not finding that his right shoulder impairment, depression, anxiety, and borderline intellectual functioning were severe impairments. (Pl.'s Br. at 11-17.) The Commissioner asserts that the medical evidence of record does not reflect a severe shoulder or mental impairment within the relevant period of time, April 6, 2004, through September 23, 2005. (Def.'s Br. at 9-12.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe. 20 C.F.R. §§ 404.1520(c); 416.920(c) (2004)." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2004); <u>see also</u> 20 C.F.R. §§ 404.1521(a); 416.921(a) (2004); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b); 416.921(b) (2004). Examples of basic work activities under those sections are:

> (1)Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)Capacities for seeing, hearing, and speaking;
> (3)Understanding, carrying out, and remembering simple instructions;
> (4)Use of judgment;
> (5)Responding appropriately to supervision, co-workers and usual work situations;  and
> (6)Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b); 416.921(b) (2004).

A.   <u>Right Shoulder Impairment</u>.

Claimant argues that the ALJ erred in not finding that he had a severe right shoulder impairment. (Pl.'s Br. at 11-12.) The medical record indicates that during a consultative examination on June 29, 2004, by Dr. Rodolfo S. Gobunsuy, M.D., Claimant presented with complaints of off and on right shoulder pain that began one year ago. (Tr. at 183.) He stated that the pain was precipitated by lifting and putting on a shirt, and was improved with rest and placing his arm in a position of comfort. (<u>Id.</u>) On exam, Dr. Gobunsuy noted that there was some crepitation of the right shoulder with tenderness anteriorly and posteriorly to the AC joint, but that there was no muscle atrophy. (Tr. at 185.) Dr. Gobunsuy further noted that Claimant had a slight decrease in his right shoulder range of motion as compared to his left shoulder. (Tr. at 187.) An x-ray of Claimant's right shoulder was normal. (Tr. at 189.) Dr. Gobunsuy opined that Claimant may have had early degenerative arthritis. (Tr. at 186.)

On July 21, 2004, state agency physician Rogelio T. Lim, M.D., completed a Physical Residual Functional Capacity Assessment Form in which he opined that due to Claimant's bursitis of his right shoulder, he was limited in reaching in all directions. (Tr. at 197.) Dr. Lim noted that Claimant's shoulder was very painful and that the pain caused problems sleeping. (Tr. at 199.) Lisa C. Tate, M.A., noted in her psychiatric evaluation of Claimant on September 10, 2004, that he reported experiencing right shoulder pain. (Tr. at 204.) Medical records from Family Healthcare Associates, Inc., on October 15, 2003, further evidence Claimant's complaints of right shoulder pain. (Tr. at 267.)

Dr. Johnny T. Dy, M.D., completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on May 26, 2005, in which he opined, *inter alia*, that Claimant was

occasionally limited in reaching. (Tr. at 335.) On June 1, 2005, Dr. Dy noted in a letter to Claimant's counsel that Claimant had fair flexion, extension, and abduction of his arms. (Tr. at 332.)

The ALJ noted Dr. Gobunsuy's evaluation of Claimant's right shoulder, but did not otherwise comment on his impairment. (Tr. at 22.) Claimant submitted additional evidence to the Appeals Council which evidenced Claimant's continued complaints of right shoulder pain. (Tr. at 360-61.) On October 5, 2005, Claimant complained of back pain and right shoulder pain and was prescribed Lortab and Depo Medrol. (Tr. at 361.) On November 15, 2005, it was noted that Claimant was unable to abduct his right shoulder due to crepitation. (Tr. at 360.) An x-ray of Claimant's right shoulder on November 15, 2005, was normal but a MRI scan on November 22, 2005, revealed a small partial tear of the supraspinatus tendon with a small amount of fluid in the subacrominal bursa and a trace of fluid in the joint space. (Tr. at 357-58.) On December 21, 2005, Claimant was diagnosed with a right torn supraspinatus tendon and was continued on Lortab 10 mg. (Tr. at 356.)

In the instant case, the additional evidence was considered by the Appeals Council and made a part of the record. The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(b) (2004), Hawker v. Barnhart, 235 F.Supp.2d 445, 445-46 (D. Md. 2002). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about [his] rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003). Thus, in the instant case, the additional evidence was considered by the Appeals Council and made a part of the record, and must have been deemed new and material and related to the period on or before the date of the ALJ's decision.

The evidence before the ALJ indicated that Claimant suffered right shoulder pain with only a slight decrease in range of motion. Diagnostic evidence was essentially normal. The undersigned finds, however, that the evidence submitted to the Appeals Council reveals a significant change in the condition of Claimant's right shoulder. The new evidence demonstrates that Claimant had a right torn supraspinatus tendon with some fluid, which rendered him unable to abduct his right arm. Because this tear was revealed by MRI as opposed to x-ray, the tear may have existed prior to the ALJ's decision. Although the record is unclear as to whether the torn tendon constitutes a severe impairment, it is clear that the condition limited Claimant's functional capacity of his right arm. Accordingly, the undersigned finds that this matter must be remanded to determine whether Claimant's right shoulder impairment affected his ability to work during the period of time covered by the ALJ's decision.

      B.    <u>Mental Impairments</u>.

Claimant next argues that the ALJ erred in not finding that he suffered a severe mental impairment. (Pl.'s Br. at 12-16.) He further asserts that the ALJ failed to mention or consider his borderline intellectual functioning, and therefore, could not have considered the combined effects of his mental impairments. (Tr. at 16.) The Commissioner asserts that the ALJ properly determined that Claimant's mental impairments were not severe based upon the assessments of Dr. Harlow, Ms. Tate, and Dr. Lilly. (Def.'s Br. at 9-10.) The Commissioner also notes that Claimant's reported activities of daily living do not suggest a severe mental impairment. (Def.'s Br. at 10.)

The medical record reveals that Claimant treated with Ahmed D. Faheem, M.D., from August, 2004, through January, 2006. (Tr. at 228-37, 343-44, 354, 362-66.) During a follow up exam on

August 18, 2004,[3] Claimant reported that his depression and anxiety were better and under control

with medication, specifically, BuSpar and Wellbutrin SR. (Tr. at 236.) On exam, he was alert, well

oriented, cooperative, and had normal attention and concentration. (Id.) Dr. Faheem diagnosed Major

affective illness (depression) and anxiety disorder NOS. (Id.) On August 23, 2004, Claimant reported

problems with depression for the past five to eight years, which had worsened since his early

retirement in April, 2004. (Tr. at 234.) On mental status exam, Claimant appeared anxious and

depressed and had impaired attention and concentration. (Tr. at 235.) His memory and recall

however, were intact, as were his judgment, speech, and fund of knowledge. (Id.) Dr. Faheem again

diagnosed depression and anxiety but opined that he had a GAF of 55.[4] (Tr. at 235.) He recommended

that Claimant undergo psychological testing and counseling and prescribed Ativan and Lexapro. (Id.)

Lisa C. Tate, M.A., conducted a psychiatric evaluation of Claimant on September 10, 2004.

(Tr. at 203-09.) Claimant complained of depression and nerves. (Tr. at 203.) He described his then

current mood as "pretty fair" and stated that his mood was depressed on most days and that he had

a diminished interest in activities. (Id.) He reported worries over life events which he had no control.

(Tr. at 204.) On mental status exam, Ms. Tate noted that Claimant's observed mood was depressed

and that his affect was mildly restricted. (Tr. at 205.) His insight and judgment however, were within

normal limits, as were his immediate, recent, and remote memories. (Tr. at 206.) Ms. Tate diagnosed

---

[3] The medical record indicates that Dr. Gobunsuy previously noted during his consultative examination on June 29, 2004, that Claimant's intellectual functioning and mental status were normal. (Tr. at 185.)

[4]   The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

Claimant with Depressive Disorder NOS, noting that he had mild psychomotor retardation; Generalized Anxiety Disorder; and Partner Relational Problem. (Id.) Claimant reported his daily activities to include checking on his son-in-law's horses, going for a ride with his wife, taking out the garbage, feeding horses, and watching television. (Tr. at 206-07.) On a weekly basis, Claimant reported attending horse trade shows and horse shows and mowing the lawn with a riding tractor. (Tr. at 207.) He further reported attending medical appointments and grocery shopping on a monthly basis. (Id.) Ms. Tate opined that Claimant's social functioning and pace were mildly deficient and that his concentration and persistence were within normal limits. (Tr. at 207-08.)

Claimant presented to Dr. Faheem on September 20, 2004, for a follow-up examination, at which he reported that he did not begin his medication treatment due to an insurance mix up. (Tr. at 233.) Claimant denied any other issues or problems. (Id.)

After reviewing Ms. Tate's psychiatric evaluation, Debra L. Lilly, Ph.D., completed a Psychiatric Review Technique Form on September 27, 2004, in which she opined that Claimant's affective and depressive disorders were not severe. (Tr. at 210-24.) Dr. Lilly noted that Ms. Tate's evaluation did not reveal any evidence of cognitive limitations and that his mental status was essentially normal. (Tr. at 222.) She further noted that Claimant reported activities of daily living which reflect that he "engages in activities that require sustained concentration." (Id.)

On October 19, 2004, Dr. Faheem noted that Claimant had problems with concentration and maintaining interest, was uncomfortable around others, had problems dealing with work and other stresses, and had impaired concentration and attention. (Tr. at 233.) Claimant was continued on his medications and counseling. (Id.)

On October 28, 2004, Stephanie Ford, M.A., completed a mental status examination and psychological testing of Claimant, pursuant to Dr. Faheem's referral. (Tr. at 225-27.) On exam,

Claimant was alert and oriented with relevant and coherent speech. (Tr. at 225.) Ms. Ford noted that

his immediate and remote memories were normal but that his recent memory was severely impaired

as he recalled only one out of four items after 30 minutes. (Id.) She noted that Claimant had average

concentration, restricted affect, sullen and slightly anxious mood, appropriate thought content, intact

judgment, good insight, fair concentration, and slow pace. (Tr. at 225-26.) Claimant had a composite

IQ of 81 which suggested borderline range of intelligence. (Tr. at 226.) The WRAT-3 revealed that

he read at a sixth grade level and did math at a fourth grade level, which were both indicative of

borderline intelligence, and spelled at a third grade level, which was indicative of mild mental

retardation. (Id.) Ms. Ford opined that these results were not suggestive of learning disabilities in

academic skills. (Tr. at 227.) Claimant's self-reported BDI-II Score (depression) was in the moderate

range at 26, and his self-reported BAI Score (anxiety) was in the severe range at 37. (Tr. at 227.) Ms.

Ford opined that Claimant was currently operating in the borderline range of intellectual functioning

but noted that the test results "may slightly underestimate his level of general intellectual functioning

and academic achievement due to limited persistence on the test items presented."[5] (Id.)

Claimant returned to Dr. Faheem on October 18, and December 17, 2004, and presented with

impaired attention and concentration. (Tr. at 232.) He reported however, that his depression was

improved with Lexapro and that he did not "fly off the handle" as he once did. (Id.) Dr. Faheem

completed a Mental Residual Functional Capacity Assessment on December 20, 2004, in which he

opined that Claimant was "disabled from being gainfully employed." (Tr. at 228-29.) He noted that

Claimant's ability to interact appropriately with the general public and to understand, remember, and

carry out very short and simple instructions was not significantly impaired. (Id.) He opined that

---

[5] The record further indicates diagnoses of depression and anxiety by the Family Healthcare
Associates, Inc., on December 14, 2004. (Tr. at 263.)

Claimant's following abilities were moderately impaired: to remember locations and work-like procedures, sustain ordinary routine without special supervision, work in coordination with or proximity to others without being distracted, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions. (Id.) Dr. Faheem opined however, that Claimant's following abilities were markedly impaired: to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a work setting; and set realistic goals or make plans independently of others. (Id.)

On January 22, 2005, Jeffrey L. Harlow, Ph.D., completed a Psychiatric Review Technique Form based on Ms. Tate's psychiatric evaluation and Dr. Faheem's treatment notes since August, 2004. (Tr. at 247-61.) Dr. Harlow determined that Claimant's affective and anxiety-related disorders were not severe and opined that he "can perform repetitive work-like activities on a sustained basis because the claimant's mental impairment causes functional capacities to be mildly limited or less." (Tr. at 247, 259.) Specifically, he opined that Claimant had no limitations in activities of daily living and had only mild limitations in social functioning, concentration, persistence, and pace. (Tr. at 257.)

Dr. Faheem noted on March 15, 2005, that although Claimant experienced episodes of losing control, he was doing all right. (Tr. at 344.) On mental status exam, he noted that Claimant was alert, well oriented, cooperative, and had normal attention and concentration. (Id.) On June 28, 2005, Claimant reported doing well as long as he took his prescribed medications. (Tr. at 343.) Claimant

14

again presented normal attention and concentration. (Id.) By letter dated August 16, 2005, to Claimant's counsel, Dr. Faheem certified his treatment of Claimant and advised that psychological testing on October 8, 2004, revealed, *inter alia*, that Claimant was functioning in the borderline range of intelligence with an IQ of 81. (Tr. at 354.)

At the administrative hearing, Claimant testified that he attends horse shows, feeds and waters his son-in-law's horses and brushes their mane, rides with his wife for one hour to WalMart, watches television, and socializes with his family. (Tr. at 386-92.) He stated that he no longer cuts the grass, performs household repairs, or hunts and fishes. (Tr. at 389-92.) Claimant testified that although he takes care of his own personal needs and dresses himself, his wife does all the laundry, dishes, and vacuuming. (Tr. at 389-90.) He further reported that he reads very little because he cannot spell. (Tr. at 393.)

The ALJ noted and summarized the evidence of Claimant's mental impairments. (Tr. at 20-22.) He noted that Ms. Tate found that Claimant's judgment, immediate memory, concentration, and recent and remote memories were normal. (Id.) He further noted that Ms. Tate observed that Claimant's affect and pace were only mildly restricted and that he had only mild psychomotor agitation. (Id.) The ALJ also noted that Dr. Gobunsuy stated that Claimant's mental status appeared normal during the examination. (Id.)

Regarding Dr. Faheem, Claimant's treating psychiatrist, the ALJ summarized Claimant's treatment with him for nearly one year. (Tr. at 20-21.) Dr. Faheem diagnosed major affective illness (depression) and anxiety disorder NOS. (Tr. at 20.) He further noted that Dr. Faheem referred Claimant to Ms. Ford for psychological testing. (Tr. at 21.) Regarding Ms. Ford's psychological exam and testing, the ALJ noted that she found that Claimant's judgment and insight were intact, that he denied suicidal or homicidal ideations, that his concentration was average, and that his immediate

15

and recent memories were intact. (Tr. at 21.) He then summarized Claimant's Beck Depression and Anxiety Inventories and rejected them because they were based on Claimant's self-reported symptoms, which were inconsistent with the evidence of record. (Id.) The ALJ did not acknowledge Ms. Ford's opinion that Claimant was of borderline intellectual functioning or the results of Claimant's WRAT-3 testing.

The ALJ noted that Claimant's depression and anxiety had improved in November and December, 2004, and that the prescribed medication helped "settle him down." (Tr. at 21.) The ALJ then summarized Dr. Faheem's mental assessment dated December 20, 2004, which markedly limited Claimant from performing certain activities. (Id.) The ALJ gave no weight to this opinion, however, because Dr. Faheem only indicated limitations without an explanatory narrative. (Id.) The ALJ further summarized Dr. Faheem's August 16, 2005, opinion that Claimant was disabled. (Id.) The ALJ likewise rejected this opinion because it was based on an unspecified physical impairment which exceeded Dr. Faheem's area of expertise. (Id.) Furthermore, the ALJ found that Dr. Faheem's opinion conflicted with Claimant's reported activities of daily living. (Id.)

Based on the foregoing evidence, the ALJ found that Claimant had no restrictions of daily living, mild difficulties in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 21.) The ALJ thus adopted the medical opinions of the state agency physicians at the reconsideration level and found that Claimant did not have a severe mental impairment. (Tr. at 22.)

Claimant submitted additional evidence to the Appeals Council which indicates that on September 20, 2005, Claimant reported to Dr. Faheem that he was doing "ok," but noted that he was having family problems. (Tr. at 366.) Nevertheless, on mental exam, Dr. Faheem noted that Claimant was alert, well oriented, cooperative, and had normal attention and concentration. (Id.) Dr. Faheem

16

continued his diagnoses of major affective illness (depression) and anxiety disorder NOS and continued Claimant on Ativan and Lexapro. (Id.) Claimant reported on October 12, 2005, that he was having problems and did not feel well, primarily as a result of being denied social security benefits. (Tr. at 365) Claimant reported that he had very bad nerves, difficulty maintaining interest, an inability to concentrate, difficulty being around people, and feelings that his activities were limited. (Id.) Dr. Faheem increased his medications and recommended that he continue counseling. (Id.) On December 7, 2005, Claimant indicated that he isolates himself from others and that he is not interested or excited in much of anything. (Tr. at 364.) He reported that counseling and medication seem to help his symptoms but that he is easily frustrated during the holidays. (Id.) Dr. Faheem again noted that his attention and concentration was impaired. (Id.)

Dr. Faheem completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on January 1, 2006. (Tr. at 362-63.) Dr. Faheem opined that Claimant had good ability to maintain personal appearance, demonstrate reliability, and relate predictably in social situations. (Id.) He found that Claimant had fair ability to deal with the public, use judgment with the public, function independently, behave in an emotionally stable manner, and understand, remember, and carry out simple job instructions. (Id.) Dr. Faheem opined, however, that Claimant retained poor or no ability to follow work rules, relate to co-workers, interact with supervisors, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out detailed and complex job instructions. (Id.)

Based on the foregoing, the undersigned finds that the ALJ failed to consider all of Claimant's mental impairments in combination. The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your

impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004).  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974).  The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id.  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed.  DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The ALJ's decision reflects consideration of Claimant's depression and anxiety, which had improved over time with treatment. However, he failed to mention Claimant's borderline intellectual functioning as determined by Ms. Ford and noted by Dr. Faheem. There is further no indication that the ALJ accommodated any limitations from Claimant's mental impairments in his RFC assessment. Accordingly, the undersigned finds that this matter must be remanded for consideration of Claimant's borderline intellectual functioning and for consideration of all his mental impairments in combination.

2. Medical Source Opinions.

Claimant further argues that the ALJ failed to evaluate properly the opinions of his treating physician, Dr. Faheem, the opinion of Dr. Dy, and the opinion of the state agency physician, Dr. Rogelio T. Lim. (Pl.'s Br. at 17-21.) Claimant asserts that had the ALJ accorded proper weight to Dr. Dy's opinion, then he would have been found disabled pursuant to Medical-Vocational Guideline 202.04. (Pl.'s Br. at 18.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527, 416.927. These factors include: (1) Length of the treatment

relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

A.     Drs. Dy and Lim.

The medical record indicates that on July 21, 2004, Dr. Rogelio T. Lim, M.D., completed a Physical Residual Functional Capacity Assessment in which he opined that Claimant is limited to performing work at the medium level of exertion. (Tr. at 194-202.) He opined that Claimant is occasionally limited in climbing and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation due to his mild chronic obstructive pulmonary disease. (Tr. at 196-98.)

20

Dr. Lim acknowledged Claimant's complaints of right shoulder pain, especially while sleeping, and limited his ability to reach in all directions due to bursitis of his right shoulder. (Tr. at 194, 197.) He found that Claimant's allegations were partially credible and noted that they lacked credibility as the "[t]reatment records do[] not correlate well with the allegations and physicals exams. [The] CE consult shows normal physical except crepitation of R[ight] shoulder." (Tr. at 199.)

Claimant was examined by Dr. Johnny T. Dy, M.D., on May 26, 2005, at the request of his attorney. (Tr. at 331-38.) Dr. Dy completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that Claimant was able to lift/carry twenty pounds occasionally and 10 pounds frequently and stand/walk two hours per workday and sit six hours per workday. (Tr. at 334-35.) He further opined that Claimant's ability to push/pull in the lower extremities was limited, that he could never perform activities requiring him to climb or balance, and that he could only occasionally kneel, crouch, crawl, or stoop. (Tr. at 335.) Dr. Dy noted that Claimant's ability to reach was occasionally limited, as was his vision, and that his exposure to certain environmental factors, including temperature extremes, noise, dust, humidity/wetness, hazards, fumes, odors, chemicals, and gases, was limited. (Tr. at 336-37.)

By letter dated June 1, 2005, to Claimant's attorney, Dr. Dy certified his treatment of Claimant and outlined his medical history. (Tr. at 331-33.) Dr. Dy noted Claimant's diagnoses of chronic pneumoconiosis, nervousness, and depression. (Tr. at 331-32.) Regarding the pneumoconiosis, Dr. Dy noted that Claimant experienced shortness of breath on exertion, especially when climbing stairs and lifting heavy items, and walking. (Tr. at 331.) He noted Dr. Faheem's treatment of Claimant for his nervousness and depression and that Claimant experienced difficulties sleeping. (Tr. at 332.) On exam, Dr. Dy found that Claimant's memory was deficient and that he had left visual field blurring on confrontation. (Id.) Claimant was able to rotate his head with some neck

21

discomfort. (Id.) He had fair grip strength of his hands and wrists; fair flexion, extension, and abduction of his arms, knees, and thighs; normal sensation; was able to walk normally on his toes and heels; and was able to tandem walk slowly. (Id.) Straight leg raising on the right caused back pain and he experienced mild tenderness to percussion over the lumbar spine on both sides, without significant spasm. (Id.) Dr. Dy opined that Claimant suffered from the following impairments: (1) chronic low back strain; (2) major affective disorder with depression and associated anxiety; (3) chronic occupational pneumoconiosis; (4) status post laceration of his left hand; (5) status post contusion of both knees; (6) status post fracture of left leg; (7) degenerative arthritis of the lumbar spine; (8) status post left shoulder contusion; (9) history of sigmoid diverticulitis; (10) status post meningitis. (Tr. at 332.) He further opined that "[w]ith the combination of his multiple medical impairments and occupational disease, I believe he is totally disabled to resume his previous work as a miner. His multiple medical impairments would limit him mainly to sedentary activities. He is in need of vocational rehabilitation evaluation." (Tr. at 333.)

The ALJ accorded Dr. Lim's opinion "some weight," but found that the objective evidence did not support his stated postural and manipulative limitations. (Tr. at 25.) The ALJ rejected the opinions of Dr. Dy because they were inconsistent with his physical examination and were not consistent with Claimant's treatment history. (Tr. at 25.) The ALJ noted that Claimant's activities of daily living and the degree of treatment received were conservative, and therefore, not consistent with Dr. Dy's extreme limitations. (Tr. at 26.) The undersigned finds that Dr. Dy's opinion is inconsistent, at least in part, with his treatment notes as reflected in his letter to Claimant's attorney. Dr. Dy's letter indicates at most, that Claimant experienced shortness of breath on exertion and mild tenderness of his lumbar spine with straight leg raising at 80 degrees. Claimant had normal grip strength, was able to rotate his neck with only discomfort, and was able to walk on his heels and toes. Although his

22

shortness of breath and back pain may limit his ability to function, as the ALJ found, they do not suggest that he is completely disabled. Nevertheless, Dr. Dy's opinion, as well as Dr. Lim's, indicates that Claimant's ability to reach is limited due to his right shoulder impairment. The undersigned has determined that this matter should be remanded for further consideration of Claimant's right shoulder impairment and any resulting functional limitation. Accordingly, the undersigned finds that these opinions must, too, be given further consideration for any limitations resulting from Claimant's right shoulder impairment.

Regarding Dr. Faheem, whose opinions are summarized above, the ALJ accorded no weight to his opinion "because he only checked the limitations and did not include a narrative summary clarifying such extreme limitations." (Tr. at 21.) The Commissioner asserts that Dr. Faheem's opinion is inconsistent with the opinions of Drs. Harlow and Lilly, Ms. Tate's findings, and Claimant's reported activities of daily living. (Def.'s Br. at 13.) Although the undersigned finds that Dr. Faheem's opinion is inconsistent with these opinions and reports, it appears that his opinion may be based, at least in part, on Ms. Ford's finding that Claimant is functioning at the borderline level of intelligence. The ALJ, however, ignored Ms. Ford's findings, and therefore, could not have properly analyzed the evidence of record regarding Claimant's mental impairments. Accordingly, the undersigned finds that the ALJ's decision is not supported by substantial evidence and must be remanded for further consideration of Dr. Faheem's opinion, particularly as it relates to Claimant's borderline intellectual functioning.

Based upon a review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence. For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Summary Judgment (Doc. No. 13.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Doc. No. 15.), **VACATE** the final decision

of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

ENTER: August 15, 2007.

R. Clarke VanDervort
United States Magistrate Judge